**Eugene C. OTTINGER, d/b/a Ottinger Construction Company**

v.

**UNITED STATES.**

No. 539-57.

United States Court of Claims.

May 6, 1959.

Gaines V. Palmes, Washington, D. C., for plaintiff.

Mary K. Fagan, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., Sheldon J. Wolfe, Washington, D. C., on the briefs, for defendant.

WHITAKER, Judge.

This case is before the court on plaintiff's motion for judgment on the pleadings, and defendant's motion for summary judgment.

Plaintiff, doing business as the Ottinger Construction Company, had a contract for the construction of 37 powder magazines, roads, railroads, etc., at the United States Naval Ammunition Depot at McAlester, Oklahoma, which included a number of drainage ditches. It sues the defendant for the difference in cost in using riprap ditch checks in the bottom of certain of the drainage ditches and "broadcast sodding" them with Bermuda grass.

The parties agree that the riprap ditch checks were shown on the drawings, but plaintiff claims that they were not specified in the specifications for the floor of the ditches, but that, on the contrary, the floor of drainageways were to be "broadcast sodded with Bermuda grass."

The plans, which showed the riprap ditch checks in controversy on the floors as well as the sides of the ditches, were made a part of the specifications by paragraph 1–08, but the specifications provide that, if there is a conflict between the

plans and the specifications, the specifications should govern. It is, therefore, necessary for plaintiff to show that the specifications specifically called for the sowing of Bermuda grass or Bermuda strip sodding in those places where the drawings call for riprap ditch checks. In our opinion, plaintiff has been unable to show this.

Section 4–10 of the specifications, headed "Bermuda Strip Ditch Checks," provides:

"(a) *Scope.* This item shall consist of planting and watering Bermuda strip sodding for ditch checks and protection of slopes at *locations shown on the plans.*" [Italics ours.].

This of course calls for Bermuda strip ditch checks at only those locations where they were shown on the plans. Where shown, the sod was to be placed both on the sides of the ditch and on the bottom. See paragraph 4–10(c) (5).

Section 9–05, under the heading of "Seeding", provides:.

"(a) *Seed.*

"(1) *Variety.* K. R. Bluestem known as strain T–3487 will be seeded on all areas except the floor of drainageways exceeding .3 foot per 100 feet gradient, which will be broadcast sodded with Bermuda grass.

\* \* \* \* \* \*

"(c) *Method of Seeding and Sodding.*

\* \* \* \* \* \*

"(3) Broadcast Bermuda grass sod, including soil, to the depth of 4 inches on all drainageway floors exceed .3 foot per 100 feet gradient. \* \* \*"

It appears from the foregoing that broadcast Bermuda grass sod was to be used on some drainageway floors, but this paragraph of the specifications does not say where it was to be used.

Plaintiff says paragraph 9–05(c) (3) says that broadcast Bermuda grass sod shall be used "on *all* drainageway floors exceeding .3 foot per 100 feet gradient,"

and that this means every drainageway floor throughout the project. But the quotation is from a section of the specifications that describes the "method" of seeding and sodding. It does not designate the places where it is to be done. What it means is, where there is to be "broadcast Bermuda grass sod", it must be put down according to the method specified. If it were to be construed as plaintiff contends, it would conflict with section 4–10, supra, which calls for Bermuda strip sodding "at locations shown on the plans."

Section 4–08 provides:

"Where necessary, slopes shall be protected from washing or slipping by hand laid riprap consisting of stone or precast concrete blocks. These walls shall be constructed at places indicated, \* \* ."

Plaintiff admits that this requires the placing of riprap on the slopes of the drainage ditches, but it insists that it does not require the use of riprap in the bottom of the ditches. But, section 1–08 of the specifications, headed "Drawings, Accompanying Specifications," provides:

"The following changes shall be made on the drawings:

\* \* \* \* \* \*

"On *Plan and Profile Sheets* the 'W' dimension with Rip Rap Ditch Checks is the width of the ditch bottom."

The specifications, therefore, recognize that riprap ditch checks are to be used in the bottom of some of the ditches.

We must conclude from the foregoing that the specifications do not show where Bermuda sod or grass is to be used, and where riprap is to be used. Resort must be had to the drawings to show where the one or the other is to be used. Reading the plans and specifications together, there is no doubt in our mind that riprap ditch checks were required in the places shown on the plans.

The contract, of which the drawings are a part, should be read as a harmonious whole, if it is reasonably possible to do so. It is not to be supposed that he who drew the specifications intended

one thing at one time, and a contradictory thing at another.

If there was any doubt in the contractor's mind about this, it was his obligation to request the contracting officer's interpretation of the plans and specifications, because article 5(e) of the contract provides:

> "All questions regarding the figures, drawings, plans and specifications and the interpretation thereof and the resolving of conflicts and inconsistencies therein shall be determined by the Contracting Officer, and such determination shall be final, subject only to appeal under the provisions of Article 16."

Plaintiff did not request the contracting officer's interpretation; but, rock having been encountered in some areas where drainage ditches were to be constructed, the defendant's representative thought that certain changes in the plans and specifications should be made, which would eliminate some of the riprap ditch checks. Plaintiff was requested to attend a meeting to agree upon an amendment in the amount due under the contract incident to such changes, but he declined to do so on the ground that no riprap ditch checks were called for, and that, if any were required to be constructed, he would be entitled to extra compensation therefor. Whereupon, the officer in charge notified plaintiff that riprap ditch checks were required at the places shown on the drawings.

Plaintiff filed a protest against this ruling with the Chief, Bureau of Yards and Docks; whereupon, the contracting officer ruled:

> "After a careful review, the Bureau finds that the riprap ditch checks as shown on the drawings are clearly a contract requirement, payment for which has been included in the lump sum contract price. * *
>
> "Accordingly, your claim for additional compensation is hereby denied. This is a final decision of the Contracting Officer."

An appeal was taken to the head of the department. It was heard before the Navy Contract Appeals Panel of the Armed Services Board of Contract Appeals, which sustained the decision of the contracting officer.

We think the decision of the contracting officer and the Board of Contract Appeals is clearly right. We see no conflict between the drawings and specifications, and the drawings very clearly call for the use of riprap at certain designated places.

It results that plaintiff's motion must be denied, and defendant's motion must be granted.

Plaintiff's petition will be dismissed. It is so ordered.

JONES, Chief Judge, BRYAN, District Judge, sitting by designation, and LARAMORE and MADDEN, Judges, concur.